Turley J.
delivered the opinion of the court.
This record presents a piece of patch work and confusion. It shows that on the 24-th day of November, 1835, Andrew Hays the attorney general for the 7th solicitorial district in the *201 State of Tennessee, preferred a bill of indictment against the prisoner for stealing three several bank notes of the denomination of five dollars each, the property of John B. Hall, Samuel Hall and Andrew J. Blackmore, merchants, trading under the name and style of Hall, Blackmore & Co., which was on the same day returned by the grand jury, with an indorsement thereon “a true bill,” signed by their foreman. The next'entry shows that the grand jury again returned into open court, and presented an indictment with three counts against the prisoner for stealing bank notes, ua true bill.” This entry bears date 7th day of December, 1835. There is then recopied the same bill of indictment of one count, found on the 24th of November, and with the same indorsement, “a true bill,” dated 24th November; then immediately follows what purports to be two other counts of said bill of indictment; the first of which, charges the prisoner with having stolen three other bank notes of the denomination of five dollars each, tire property of John Page and J. D. March; and the second count with having stolen like other bank notes the property of Jesse D. March. These counts are not signed by the attorney general, neither does it appear what action, if any, was had upon them by the grand jury.
To this indictment, the prisoner pleaded not guilty; was put ■upon his trial and found guilty on the third count of the bill of indictment, that is, the second of the counts, which are not signed by an attorney general, and so far as can be legally seen, not acted upon by the grand jury. The date of this conviction is, December the 8th. On the 24th oí the same month, the prisoner moved the court for a new trial, which was refused; afterwards, to wit: on the 23th, an entryfis made, mmcpro tunc, which states, that on the 7th day of December, an attorney general pro tern, came into court and moved for leave to amend die indictment by inserting two additional counts-,which was granted. In this entry, it is stated by way of recital, that the indictment filed on 24th day of November, and the two counts filed under the order of amendment on the 7th day of December, were sent to the grand jury, and by them re-tened a true bill. No part of tbe record shows, not even an amendment nunc pro tunc, that the attorney general was ab *202 sent on the 7th of December, or that any person had been . . , , tt *u-appointed pro tempore, to prosecute in his stead. Upon tnrs record can the conviction and judgment against the prisoner SUS(;aine¿? We think not, because,
1st. The count in the indictment upon which the prisoner was convicted, was not preferred by the attorney general of the district, but by one purporting to have been appointed pro tern, by the court. Before the court can appoint an attorney general pro'^tempore, the record must show, that the officer appointed by the state is absent. This is not done, therefore the count on which the verdict is predicated is a nullity.
2nd. The. count upon which the prisoner stands convicted is not signed by an attorney general, nor does it appear from the record, except by recital in the nune pro tunc entry, that it was acted on by the grand jury. In the case of Fout vs. State of Tennessee, 3 Hay. 98: it is expressly determined that no bill of indictment should be sent to the grand jury without the sanction and approbation of the attorney general, proved by his signature on some part of the indictment. We not only adnait the authority, but concur in the opinion. We do not say that it is absolutely necessary, that his signature should be at the conclusion of the bill, but it must be on it, and must show that it is intended to covtr all the counts contained therein. Is this done in this ? surely not. The bill of indictment found by the jury was filed by the attorney general, Hays, on the^ 24 th November: what is called the two last counts, were filed by an attorney general pro tern, under an order for an amendment. It cannot be argued that these counts are filed and prosecuted with the sanction and approbation of the attorney general Hays, for he was absent. They were in fact filed by an attorney general pro tempore; where is his signature as evidence of his sanction and approbation thereof; no where. But it is argued, that these counts were filed as an amendment to the original bill, that the three constitute but one indictment, and that the signature of Hays to the bill filed by him, may be refered to the two counts filed by the attorney general pro tempore. We do not think so. The two last counts contain distinct and separate offences from that charged in the first, and having no connection therewith so far *203 as the indictment shows: the first count stood in need of no a- . mendment, in it the offence is correctly charged; it was edtobe amended; but leave was asked and granted to file two additional counts, charging the prisoner with having stolen other money, the property of other and different persons, being distinct substantive charges, upon which the prisoner might have been, and in fact was tried and convicted without any connection with the first. The three counts might have been joined, but the attempt to add the two last to the first, by way of amendment cannot be sustained. A bill of indict-mont can be amended in matter of form. By the common law the amendment of civil and criminal proceedings were placed on the same footing. In the case of the Queen vs. Tutchin, Salk. 51, it was held, that whatever at common law might be -amended in civil cases, was amendable in criminal cases. By the common law trivial errors as to mispleading in civil cases were amendable while the proceedings were in fieri and not afterwards; 3 Black. Com. 406: 6 Dane’s Dig. 406. In the case of Bondfield, quitam, vs.Milner, 2 Burrow 1098, for usury, a mistake in the date of the note was allowed to be amended. This doctrine as to amending matters of form in qui lam actions is recognized in many cases in the books; but in Maddock vs. Hammelt 7 Dur. and East 55, it -is expressly determined that the amendment must not introduce any new substantive cause of action, And in the case of Bondfield vs. Milner, it is said “that the statutes of amendment do not apply to penal actions,” neither do they apply to criminal prosecutions; but they are left as at common law, amendable only in matter of form.
Having showed that the two last counts cannot be considered as amendments of the bill of indictment,it follows that they constitute a new bill, which must have been prefered with all the formalities required by law, signed by the attorney general and acted upon by the grand jury. It does not appear that this was done. We do not say that the attorney general, Hays, could not have appended the two last counts to the first,making one new indictment of the three; and thus causing his signature to the first, to cover the whole. We think fie might; but we do say, that the attorney general pro tempore, could not, be’ *204 cause they were filed upon his action, and not that of Hay's, It was his mind and not Hay's, that conceived them, and it is his signature that is wanted as evidence thereof. But it was not only necessary that the bill of indictment upon which the prisoner was tried, should have been signed by the attorney general pro tembut that it should have been again passed upon by the grand jury, and a return of how they found it, made in writing and signed by the foreman. Where is this to-be found? Not in the record, and no recital thereof in any entry either nunc pro tunc or otherwise can be substituted in its stead. It may be, and no doubt is true, that the two additional counts, together with the old bill of indictment were re-submitted to the grand jury, and that they intended to return upon them “a true bill;” but there is no other return to be found than that upon the first bill, bearing date the 24th of November, too early to be applied to the two counts filed on the 7th of December,
It is in vain to say, that for these causes the prisoner ought to have moved to quash the bill, and that the defects are cured by verdict. In criminal proceedings, nothing but matters of form are cured by verdict. If we were to sustain this judgment, we would feel that we were destroying the great and fixed principles of criminal practice, so necessary to the protection of the liberty and life of the citizen. We cannot do so; and therefore reverse the judgment.
There is' another question of equal importance in this case, which it becomes necessary to determine, that is, whether the proof, as set forth in the bill of exceptions, sustains tho charge of larceny against the prisoner. The substantial facts are, that Hall, Blackmore & Co. sent a load of hair to Page by their slave Charles; that Page bought a part of it himself, and sold a part of it to March, who paid to the negro Charles therefor the five dollars, for the stealing of which, the prisoner was convicted. Page inclosed the purchase money for the hair bought by himself and March, in a sealed letter, directed to Hall, Blackmore & Co. and handed it to the negro, to be delivered to them. He arrived at Haysborough about dark, stopped at Morgan’s tavern and enquired for him, and was informed that he was sick in bed- Ho went into a room, where *205 the prisoner was in bed, and again inquired for Morgan and received the same answer; supposing the prisoner to be Mor-" gan, he delivered him the letter sealed, informing him that there was money in it, and that he wished him to keep it safe till morning. The prisoner received the letter without saying any thing; Charles retired from the room and having discovered his mistake, in a few minutos returned and reclaimed the letter. In the meantime the prisoner had broken it open and taken out the five dollar note, which however he denied, upon being charged with it by Charles; but in a short time aróse, dressed himself, went to a drinking house a short distance from the tavern and passed the note. That the prisoner broke the letter and abstracted the note with the fraudulent and felonious intention of appropriating it to his own use, cannot be doubted; but it is contended that inasmuch as the negro delivered the letter to him, without his solicitation or request, he could be guilty of no larceny, in taking the money; that there was no trespass, but only a breach of trust. It is certainly true, that to constitute the crime of larceny, a trespass in the original. taking must have been committed upon the right owner, as is stated in the note to the case of the State vs. Long, 1 Hay. 154: 2 Ten. 68, and Mar. and Yer. 126. The authority of these cases is admitted, and it becomes necessary to inquire what it takes to constitute a trespass in the original taking, The taking must-have been invito domino, against the will of the owner, and the property at the time must have been either in his actual or constructive possession. The necessity for the existence of both these facts in order to constitute a trespass in the taking, is expressly recognized by the English authorities as well as our own. Yin Russell on crimes page 1034, it is said, there must be an actual taking or severance of the goods from the possession of the owner; because larceny includes a trespass. If therefore no trespass, no felony, and in page 1048, “the taking must have been invito domino.” It is only in the application of these principles, that the English authorities and ours differ, and that not to so great an extent as might at first be thought.
The English authorities have gone further in giving a constructive possession to the owner than our courts are willing to *206 go. The older authorities were, that if the owner lost his proper-ty, the finder could not commit a felony in converting it to his use; but in some of the later decisions, the courts determined, that if he converted it with a felonious intent, knowing who the owner was, he would be guilty of felony; these decisions, our courts have refused to recognize. Let us then inquire whether the prisoner did not commit a trespass in taking the money. To constitute this, we have seen that it must have been taken from the actual or constructive possession of the owner and against his consent. The owners of this money we consider to have been Hall, Blackmore & Co. it was in the possession of their slave, and we say upon the authority of the case of William Bass, Leach’s Crown Law 242 and 108, that ,1ns possession, was their possession.
Indeed from the very nature of the relation between master and servant, the possession of the slave must always be the possession of the master. He can acquire no right to property by possession or otherwise; he himself and all he may have, belong to his master. The possession of the slave is a naked charge, unaccompanied with a trust, and he cannot part with it legally to another, except when in some peculiar cases he may have been made the agent of the master, which is not the case here. He can give no consent by which the possession may be transferred, for in point of fact he has no possession in himself. His consent then -is a nullity, and if a person receive property from him, with a fraudulent and felonious intent of converting it to his own use, he is guilty of a larceny, because he has taken it from the possession of the owner and without Jbis consent. Awful would be the consequences if this were, not the law. Shall a man’s ostler have the power to enable every thief in the country to take his horses and protect himself from punishment, by saying he received them from his slave, in whose possession they were found, and therefore there is nothing but a breach of trust. There would be no safety if this were to be the rule, for most of the personal property in the country is under the actual control and care of slaves. The owners can only be deprived of the possession of their property, without a trespass, by losing* it, by their delivery or *207 contract, or by the delivery of some person having authority from them. They have in this instance been deprived of it, not by loss, not by their delivery or consent, or by any person having authority from them; then the necessary consequence is, that the prisoner committed a trespass in taking the bank note from the letter. That the taking was invito domino, and with a fraudulent and felonious intent does not admit of argument. Therefore the prisoner must be remanded to the circuit court for further proceedings, &c.
Judgment reversed.